# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

NANCY BURGESS,
on her own behalf and
on behalf of all others similarly situated,

Plaintiffs,

v.

RESTAURANT EXPRESS DELIVERY, LLC d/b/a FIVE STAR FOOD EXPRESS,
PHILIP PORTMAN,
MATTHEW P. BARTNIK, and
BETHANY BARTNIK,

Defendants.

## CLASS AND COLLECTIVE ACTION COMPLAINT
## FOR UNPAID WAGES

Plaintiff, by and through undersigned counsel, files this Collective Action Complaint for Unpaid Wages against the above-listed Defendants.

## STATEMENT OF THE CASE

1.  Plaintiff and those similarly situated are currently or were formerly employed by Defendants at sub-minimum wage rates to work as dispatchers in Defendants' restaurant delivery business.

1

2. Restaurant customers placed home delivery orders through Defendants' website or call center, where they communicated with Plaintiff Burgess and other similarly situated operators ("others"). Plaintiff Burgess and the other operators were tasked with relaying the customer's order to the restaurant, dispatching a delivery driver to the restaurant, assuring delivery and addressing any customer service concerns.

3. Defendants' business is based in Michigan, but provides service to restaurants located in no fewer than six states. Plaintiff Burgess, a Colorado resident, performed work for Defendants in Colorado. At times relevant to this action, Defendants employed dispatchers located in no fewer than four states. Plaintiff Burgess and the other dispatchers performed their work within Defendants' online platform, administered from and housed within the state of Michigan.

4. Plaintiff and the other dispatchers were individuals working within Defendant's business and did not own or operate independent businesses contracting with Defendants. Defendants misclassified all dispatchers as independent contractors.

5. Defendants paid Plaintiff Burgess and the other dispatchers hourly for their work. At times, Defendants paid them as little as $6/hour for their work, providing no health insurance nor other fringe benefits. Plaintiff Burgess and the other dispatchers were paid less than the required minimum and overtime wage rates for their work.

6. This action concerns work performed between January 30, 2017 and the present.

7. By failing to pay Plaintiff Burgess and the other dispatchers required minimum and overtime wages, the Defendants violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C.

§§ 201 *et seq.,* and the Michigan Workforce Opportunity Wage Act, MICH. COMP. LAWS § 408.411 *et seq.* ("MWOWA").

8. Plaintiff seeks compensation for Defendants' violations of the FLSA and of the MWOWA on her own behalf and on behalf of Defendants' other dispatchers.

## PARTIES, JURISDICTION, AND VENUE

9. Plaintiff Nancy Burgess was employed by Defendants from approximately January 30, 2017 2007 through March 17, 2018. Plaintiff Burgess' signed FLSA Consent to Sue Form is attached to this Complaint as Plaintiff's Exhibit 1.

10. Defendant Restaurant Express Delivery, LLC. is a Michigan Limited Liability Company with a principal business address of 1216 Darci Dr., Fenton, MI 48430.

11. Defendant Phillip Portman was a founding organizer of Restaurant Express Delivery, LLC.

12. At times pertinent to this action, Defendant Portman was an owner of Restaurant Express Delivery, LLC.

13. At times pertinent to this action, Defendant Portman was a member of Restaurant Express Delivery, LLC.

14. At times pertinent to this action, Defendant Portman was a manager of Restaurant Express Delivery, LLC.

3

15. At times pertinent to this action, Defendant Portman exercised day-to-day operational control over Restaurant Express Delivery, LLC.

16. At times pertinent to this action, Defendant Matthew P. Bartnik was an owner of Restaurant Express Delivery, LLC.

17. At times pertinent to this action, Defendant Matthew P. Bartnik was a member of Restaurant Express Delivery, LLC.

18. At times pertinent to this action, Defendant Matthew P. Bartnik exercised day-to-day operational control over Restaurant Express Delivery, LLC.

19. Defendant Bethany Bartnik was a founding organizer of Restaurant Express Delivery, LLC.

20. At times pertinent to this action, Defendant Bethany Bartnik was the registered agent for Restaurant Express Delivery, LLC, on file with the Michigan Department of Licensign and Regulatory Affairs, Corporations, Securities & Commercial Licensing Bureau.

21. Defendant Bethany Bartnik was a managerial employee of Restaurant Express Delivery, LLC. At times pertinent to this action.

22. Upon information and belief, at times pertinent to this action, Defendant Bethany Bartnik owned an interest in restaurant Express Delievery, LLC.

23. At times pertinent to this action, Defendant Bethany Bartnik exercised day-to-day operational control over Restaurant Express Delivery, LLC.

24. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this case arising under the laws of the United States. This action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

25. Plaintiff requests that this Court exercise its supplemental jurisdiction over her claims under the Michigan Workforce Opportunity Wage Act, MICH. COMP. LAWS § 408.411 *et seq.* ("MWOWA")..

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claims occurred in the District of Colorado.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

27. Defendants employed the Plaintiff, and those similarly situated, in their restaurant delivery business.

28. Plaintiff's job duties included taking home delivery food orders through Defendants' website or call center, communicating with customers, relaying the customer's order to the restaurant, dispatching a delivery driver to the restaurant, assuring delivery and addressing any customer service concerns.

29. Defendants' business is based in Michigan, but provides service to restaurants located in no fewer than six states.

30. Plaintiff Burgess, a Colorado resident, performed work for Defendants in Colorado.

31. At times relevant to this action, Defendants employed dispatchers located in no fewer than four states.

32. Plaintiff Burgess and the other dispatchers performed their work within Defendants' online platform, administered from and housed within the state of Michigan.

33. Defendants employed the Plaintiff between January 30, 2017 and March 17, 2018.

34. Defendants paid the Plaintiff and those similarly situated on an hourly basis.

35. Defendants paid the Plaintiff and those similarly situated at rates between $6.00 and $7.50 per hour of work.

36. During some workweeks, Defendants paid the Plaintiff and others similarly situated at hourly rates below the hourly minimum wage rate required by Michigan and federal minimum wage laws.

37. For example, during the workweek beginning on February 12, 2017, Plaintiff Burgess worked 43 hours for Defendants. Defendants paid Plaintiff Burgess $6.00 per hour for that work.

38. The Plaintiff and other hourly employees sometimes worked more than 40 hours per week for Defendants.

39. Defendants failed to augment the regular rates of pay of the Plaintiff and others similarly situated to pay them overtime premiums for hours worked in excess of 40 in a given workweek.

40. Defendants paid their hourly employees for all hours at straight time rates.

41. For example, in the pay period running from April 16, 2017 through April 22, 2017, Plaintiff Burgess worked 46.25 hours, or 6.25 hours of overtime. All of her hours in that pay period were compensated at her then-regular rate of $7.50 per hour.

42. Plaintiff and each member of the class she seeks to represent handled materials which moved in interstate commerce.

43. Defendants operated an enterprise whose aggregated, annual gross volume of sales made or business done was not less than $500,000.00.

6

44. Defendants employed the Plaintiff and others similarly situated in interstate commerce.

45. Plaintiff and others similarly situated were engaged in commerce during each workweek pertinent to this action.

46. In the course of each work day, Plaintiff Burgess, situated in Colorado, was employed by Defendants, situated in Michigan, to take and process the orders of customers located in numerous states. Ordinarily, the Colorado-based Plaintiff took food orders, using Defendant's online platform housed in Michigan, from customers located in neither Michigan nor Colorado.

47. Plaintiff was regularly required to process the credit cards of Defendant's customers.

48. The entirety of Plaintiff's work for Defendants was conducted online and/or on the telephone. Plaintiff was required to be logged on to Defendant's internet-based platform during all work hours.

49. Plaintiff and others similarly situated were regularly employed by Defendants to use the channels of interstate commerce.

50. Defendant Phillip Portman was a founding organizer of Restaurant Express Delivery, LLC.

51. At times pertinent to this action, Defendant Portman was an owner of Restaurant Express Delivery, LLC.

52. At times pertinent to this action, Defendant Portman was a member of Restaurant Express Delivery, LLC.

53. At times pertinent to this action, Defendant Portman was a manager of Restaurant Express Delivery, LLC.

54. At times pertinent to this action, Defendant Portman exercised day-to-day operational control over Restaurant Express Delivery, LLC.

55. Defendant Portman issued or authorized payments for hourly work to the Plaintiff.

56. Defendant Portman determined Plaintiff's hourly rate of pay.

57. Plaintiff's requests for an increase in her hourly rate of pay were referred to Defendant Portman.

58. Defendant Portman established the work rules applicable to Plaintiff.

59. At times pertinent to this action, Defendant Matthew P. Bartnik was an owner of Restaurant Express Delivery, LLC.

60. At times pertinent to this action, Defendant Matthew P. Bartnik was a member of Restaurant Express Delivery, LLC.

61. At times pertinent to this action, Defendant Matthew P. Bartnik exercised day-to-day operational control over Restaurant Express Delivery, LLC.

62. Defendant Matthew P. Bartnik possessed and exercised the power to hire and fire dispatchers.

63. Defendant Matthew P. Bartnik interviewed and hired the Plaintiff.

64. Defendant Matthew P. Bartnik issued or authorized payments for hourly work to the Plaintiff.

65. Defendant Matthew P. Bartnik determined Plaintiff's hourly rate of pay.

66. Plaintiff's requests for an increase in her hourly rate of pay were referred to Defendant Matthew P. Bartnik.

67. Defendant Matthew P. Bartnik established the work rules applicable to Plaintiff.

68. Defendant Bethany Bartnik was a founding organizer of Restaurant Express Delivery, LLC.

69. At times pertinent to this action, Defendant Bethany Bartnik was the registered agent for Restaurant Express Delivery, LLC, on file with the Michigan Department of Licensing and Regulatory Affairs, Corporations, Securities & Commercial Licensing Bureau.

70. Defendant Bethany Bartnik was a managerial employee of Restaurant Express Delivery, LLC. At times pertinent to this action.

71. Upon information and belief, at times pertinent to this action, Defendant Bethany Bartnik owned an interest in restaurant Express Delievery, LLC.

72. At times pertinent to this action, Defendant Bethany Bartnik exercised day-to-day operational control over Restaurant Express Delivery, LLC.

73. Defendant Bethany Bartnik had and exercised the power to hire and fire dispatchers.

74. Defendant Bethany Bartnik interviewed and hired the Plaintiff.

75. Defendant Bethany Bartnik monitored, supervised and directed the Plaintiff and others similarly situated as to their job duties.

76. Defendant Bethany Bartnik established and enforced job performance guidelines applicable to the Plaintiff and others similarly situated.

77. Defendant Bethany Bartnik established and modified the work schedules of the Plaintiff and other dispatchers.

78. The Defendants misclassified the Plaintiff and other similarly situated dispatchers as independent contractors exempt from minimum wage and overtime requirements.

79. Upon information and belief, the Defendants ran their entire restaurant delivery business across six states without acknowledging a single dispatcher or driver as an "employee".

80. Defendants did not make payments for the services dispatchers provided to an independent business entity those dispatchers owned or operated. Rather all dispatchers received payments for their hourly work issued directly from Defendants to the individual dispatcher in his or her name. Direct deposits of these payments for hourly work were not made to a business account, but rather to the personal bank accounts of individual dispatchers.

81. Plaintiff and similarly situated dispatchers provided the core service sold to customer restaurants by Defendants.

82. Defendants imposed extensive work rules on the Plaintiff and other similarly situated dispatchers.

83. Defendants required the Plaintiff and other dispatchers to conform to an hourly work schedule Defendants circulated.

84. Defendants established minimum hourly scheduling requirements applicable to the Plaintiff and other similarly situated dispatchers.

85. Defendants required that Plaintiff and other dispatchers remain on duty until a replacement dispatcher arrived in the virtual workplace to take their place. Defendant required this to avoid disruption of Restaurant Express' service to its customers.

86. Defendants required that Plaintiff and other dispatchers obtain prior permission from Defendants in order to take a vacation. Defendants required this to avoid disruption of Restaurant Express' service to its customers.

87. Defendants established uniform hourly rates payable to new dispatchers.

10

88. Defendants provided training regarding performance of dispatcher duties to the Plaintiff and dispatchers.

89. Defendants provided, owned and controlled the online platform required to perform the dispatchers' work.

90. Defendants supervised the completion and quality of dispatchers' work.

91. Defendants possessed and exercised the right to direct and control dispatchers in the performance of their work.

92. Defendants evaluated the job performance of Plaintiff and other dispatchers. Defendants required that the dispatchers perform work of an undefined scope at Defendants' discretion. Defendants required that the Plaintiff and other dispatchers assist them in completing undefined miscellaneous office projects as the need for such help may arise.

93. Defendants imposed a drug free workplace policy upon the Plaintiff and other dispatchers.

94. Defendants limited the social media activities of the Plaintiff and other dispatchers.

95. Defendants required that the Plaintiff and others similarly situated provide advanced notice of intent to cease their work as dispatchers.

96. Defendants required that dispatchers refrain from competing with Restaurant Express as a condition of their employment.

97. Defendants asserted proprietary rights over any intellectual property, discoveries, inventions, patentable material and copyrightable materials a dispatcher might produce during the term of his or her service.

98. Defendants imposed specifications and security requirements on the personal computers the Plaintiff and other dispatchers used in the course of their work for Defendant.

99. The Plaintiff and others similarly situated were paid a fixed rate on an hourly basis. They lacked any opportunity for profit or loss based upon their performance of their dispatching work for Defendants.

100. The Plaintiff and others similarly situated made no significant investment in the business. Their work required only that they possess common home computers.

101. The Plaintiff was employed by Defendants during 11 months during 2017 and 2018. Defendants trained their dispatchers and imposed minimum scheduling requirements on them. Defendants expected an extended duration of service from their dispatchers.

102. Defendants imposed no educational or certification requirements on the dispatchers. Plaintiffs' work as dispatchers was generally unskilled.

103. In approximately January of 2018, Defendants began to off-shore dispatch work, hiring dispatchers located in the Philippines to do the dispatch work Plaintiff and other similarly situated workers located in the United States performed.

## 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

104. The named Plaintiff brings her Count I claims under the Fair Labor Standards Act as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all similarly situated employees currently and formerly employed by Defendants. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines this "216(b) Class" as follows:

> All individuals whom Defendants compensated on an hourly basis for their work as dispatchers, performed in the United States between January 30, 2017 and the present.

105. All potential 216(b) Class Members are similarly situated because they worked for Defendants as hourly dispatchers and are or were subject to Defendants' common policies of (1) misclassifying them as independent contractors and (2) failing to pay them the required FLSA minimum wage rate and (3) failing to pay them required FLSA overtime premiums.

## CLASS ACTION ALLEGATIONS

106. Plaintiff asserts her Count II claim as a Fed. R. Civ. P. 23(b)(3) class action, on her own behalf and on behalf of the following class for which Plaintiff seeks certification.

107. Pending any modifications necessitated by discovery, Plaintiff asserts her Count II Claims under the Michigan Workforce Opportunity Wage Act ("MWOWA"), on behalf of a class preliminarily defined as follows:

> All individuals whom Defendants compensated on an hourly basis for their work as dispatchers, performed in the United States between January 30, 2017 and the present.

108. Plaintiff and the members of the alleged class were subject to a common policy of misclassifying dispatchers as independent contractors and paying new dispatchers at hourly rates below the minimum wage required by the MWOWA. Mich. Comp. Laws Serv. § 408.414. Plaintiff suffered the same harm as the absent members of the alleged class.

109. On information and belief, the proposed class is so numerous that joinder of all members is impracticable. Plaintiff does not know the precise size of the potential class because that information is within Defendants' control. However, Plaintiff believes and alleges that the number of potential class members is approximately 40 individuals. Membership in the class is readily ascertainable from Defendants' employment records.

110. Numerous questions of law and fact regarding Defendants' liability are common to the putative class and predominate over any individual issues which may exist, as all claims are based on a uniform misclassification applied to all dispatchers in the alleged class. Common questions of law and fact include, for example:

    a. Whether workers located outside Michigan but working for a Michigan LLC, in a virtual workplace established administered and controlled in Michigan are afforded the protections of the MWOWA;

    b. Whether Defendants correctly classified the dispatcher position as that of an independent contractor;

    c. Whether Defendants failed to pay Plaintiff and the putative class the required minimum wage rate;

    d. Whether all Defendants are jointly and severally liable for the alleged violation; and

    e. Whether the MWOWA supports the alleged individual liability of owners exercising day-to-day operational control over the Defendant LLC.

111. The claims presented by the putative class representative are typical of those possessed by all members of the proposed class. This is an uncomplicated case of the failure to pay the proper minimum wage rates. The claims at issue arise from Defendants' policy of classifying dispatchers as independent contractors, which was applicable to Plaintiff and to all members of the proposed class. If Defendant's classification of the dispatch position as an independent contractor was unlawful, then Defendant failed to pay required minimum wages to

the entire class. Conversely, if Defendants correctly classified the dispatch position as an independent contractor, then no class member was covered by the MWOWA.

112. Defendant has acted and refused to act on grounds generally applicable to all members of the proposed class. Specifically, the failure to pay the required MWOWA wage rates is the result of a general classification of the dispatch position as an independent contractor, which was uniformly applicable to all class members. As such, Defendants acted on the same grounds with respect to the entire proposed class.

113. The representative Plaintiff will fairly and adequately protect the interests of the proposed class. Because all class members were subject to the same violation of law, the interests of absent class members are coincident with, and not antagonistic to, those of the named Plaintiff. The named Plaintiff will also litigate the absent class members' claims fully.

114. The named Plaintiff is represented by counsel experienced in the class action litigation of wage claims.

115. As set forth in ¶110, *supra*, questions of law and fact common to the proposed class predominate over any questions affecting only individual members, and class treatment is superior to other available methods for fairly and efficiently adjudicating the controversy.

116. Plaintiff is unaware of any members of the putative class who are interested in presenting their claims in a separate action. Plaintiff is are unaware of any litigation concerning this controversy which has already been commenced by any member of the putative class.

117. It is desirable to concentrate this litigation in this forum because Plaintiff Burgess' claims arose in this judicial district.

118.  There are not likely to be difficulties in managing the proposed class.  The contours of the proposed class will be easily defined by reference to the payroll documents that Defendants were legally required to create and maintain.  *See* 29 C.F.R. § 516.2.  Notice will be easily distributed because all members of the proposed class were recently employed by Defendants and Defendants were required to create and maintain records containing the mailing addresses of each class member.  *See id.*

### COUNT I – Failure to Pay Minimum & Overtime Wages
### Violation of the FLSA (29 U.S.C. § 201 *et seq.*)

119.  Plaintiff repeats and realleges each of the allegations contained in ¶¶ 1-105 above as if fully set forth herein.

120.  This Count is asserted against all Defendants.

121.  As set forth in ¶¶ 104-105 *supra,* Plaintiff asserts this count on her own behalf and on behalf of all others similarly situated ("others").  29 U.S.C. § 216(b).

122.  Plaintiff and others were "employees" as that term is defined by the FLSA.  29 U.S.C. § 203(e).

123.  Defendants "employed" the Plaintiff and others as that term is defined by the FLSA. 29 U.S.C. § 203(g).

124.  Defendants were Plaintiff's and others' "employers" as that term is defined by the FLSA.  29 U.S.C. § 203(d).

125.  Defendants employed the named Plaintiff and others in commerce or in the production of goods for commerce.

126.  Defendants employed the named Plaintiff and others in an enterprise "engaged in commerce or in the production of goods for commerce" as defined by 29 U.S.C. § 203(s)(1).

16

127. Defendants violated the FLSA when they failed to pay Plaintiff and others minimum wage for all hours worked.  29 U.S.C. § 206.

128. Defendants violated the FLSA when they failed to pay Plaintiff and others overtime premiums for hours worked beyond forty in each given workweek.  29 U.S.C. § 207.

129. Plaintiff and others have suffered lost wages and lost use of those wages in an amount to be determined at trial.

130. Plaintiff and others are entitled to recover unpaid minimum wages, unpaid overtime premiums, liquidated damages, attorney's fees and costs.  29 U.S.C. § 216(b).

### COUNT II – Failure to Pay Minimum Wage
### Violation of the MWOWA (MICH. COMP. LAWS § 408.411 *et. seq.*)

131. Plaintiff repeats and realleges each of the allegations contained in ¶¶ 1-103, and 106-118 above as if fully set forth herein.

132. This Count is asserted against all Defendants.

133. As set forth in ¶¶ 106-118 *supra,* Plaintiff asserts this count on her own behalf and on behalf of all others similarly situated ("others").

134. Plaintiff and others were "employees" as that term is defined by the MWOWA because they were employed by Defendants "at a fixed site designated by the employer".  Mich. Comp. Laws Serv. § 408.412(c).  Plaintiff and others were employed by Defendants in Defendants' online platform, established and controlled within the State of Michigan.

135. Defendants "employed" the Plaintiff and others as that term is defined by the MWOWA because they "engaged, suffered or permitted [them] to work."  Mich. Comp. Laws Serv. § 408.412 (b).

136. Defendants were Plaintiff's and others' "employers" as that term is defined by the MWOWA because they employed more than two members of the alleged class during 2017 and 2018.  Mich. Comp. Laws Serv. § 408.412(d).

137. Defendants were required to pay the Plaintiff and others $8.90 for each hour of work occurring during 2017.  Mich. Comp. Laws Serv. § 408.414(d).

138. Defendants were required to pay the Plaintiff and others $9.25 for each hour of work occurring during 2018.  Mich. Comp. Laws Serv. § 408.414(e).

139. Defendants violated the MWOWA when they paid the Plaintiff and others less than the required rate for each hour of work.   Mich. Comp. Laws Serv. § 408.413.

140. The Plaintiff and others are entitled to "the difference between the amount paid and the amount that, but for the violation, would have been paid the employee[s] under this act and an equal additional amount as liquidated damages together with costs and reasonable attorney fees as are allowed by the court."  Mich. Comp. Laws Serv. § 408.419(1)(a).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that:

As to her Count I claim brought under the FLSA, Plaintiff respectfully requests an Order from the Court that:

   a. This case be certified to proceed as a collective action under 29 U.S.C. § 216(b) and that appropriate notice of this suit and the opportunity to opt into it be provided to all potential class members;

   b. Plaintiff and the 216(b) Class be awarded unpaid minimum and overtime wages;

   c. Plaintiff and the 216(b) Class be awarded liquidated damages as required by law;

   d. Plaintiff and the 216(b) Class be awarded pre-judgment and post-judgment interest as permitted by law; and

e. Plaintiff and the 216(b) Class be awarded costs and attorney fees as per 29 U.S.C. § 216(b); and

f. Plaintiff and the 216(b) Class be awarded such other and further relief as may be necessary and appropriate.

As to her Count II claim brought under the MWOWA, Plaintiff respectfully requests an Order from the Court that:

a. This action be certified as a class action pursuant to Fed. R. Civ.P. 23;

b. Plaintiffs be certified as class representatives of the Rule 23 Class as defined in ¶ 107 *supra*;

c. Undersigned counsel be appointed Rule 23 class counsel;

d. Prompt notice of this litigation be sent to all potential Rule 23 class members;

e. Plaintiffs and the Rule 23 Class be awarded the unpaid balance of the full amount of wages owed them, an equal additional amount as liquidated damages together with costs and reasonable attorney fees as are allowed by the court. Mich. Comp. Laws Serv. § 408.419(1)(a).

f. Plaintiffs and the Rule 23 Class be awarded such other and further relief as may be necessary and appropriate.

Respectfully Submitted,

*/s/ Andrew H. Turner*
Andrew H. Turner
Ashley K. Boothby
THE KELMAN BUESCHER FIRM
600 Grant Street – Suite 450
Denver, CO 80203
Tel: (303)-333-7751
Fax: (303)-333-7758
aturner@laborlawdenver.com

                Robert Anthony Alvarez
                Michigan Bar # P66954
                *Application for Admission Pending*
                Avanti Law Group PLLC
                600 28th St. SW
                Wyoming, MI  49509
                Tel: (616) 257-6807
                Fax:  (616) 257-8501

                ***Counsel for Plaintiffs***